IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-CV-22861-KING

AGC, LLC,

    Plaintiff,

vs.

CENTURION AIR CARGO, INC.,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Defendant CENTURION AIR CARGO, INC.'s Motion for Summary Judgment (the "Motion") (DE 9), filed April 13, 2015.[1] Plaintiff's Complaint (DE 1) states a single claim for delay damages under Article 19 of the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106–45, 2242 U.N.T.S. 350 (the "Montreal Convention"). The Court heard oral argument on the Motion during the Pretrial Conference on June 12, 2015.

### BACKGROUND[2]

On February 8, 2014 Centurion Air Cargo, Inc. ("Centurion") entered into an "Agreement of Aircraft Charter" (the "Agreement") with AGC, LLC ("AGC") for the air transport of machinery from Brazil to Miami for the sum of $190,000, which AGC paid to Centurion upon execution of the contract. After being transported from Brazil to Miami, the

---

[1] The Court has additionally considered Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (DE 12) and Defendant's Reply in Support of its Motion for Summary Judgment (DE 14).
[2] The following facts are undisputed.

1

machinery was to be transloaded from Centurion's aircraft onto the aircraft of another air freight company and then flown to St. Johns, Newfoundland.

The cargo was tentatively scheduled to depart from Rio de Janeiro, Brazil, on February 10, 2014 at 16:30 GMT, and arrive in Miami on February 11, 2014 at 00:30 GMT. On February 10, 2014, the tentative schedule was disrupted, after the cargo was loaded on the chartered Centurion aircraft in Rio de Janeiro, when a tow tug being operated by Centurion's local airport ground handlers collided with the aircraft's No. 3 engine, causing extensive damage and placing the aircraft out of service. At 9:38 p.m. EST on February 10, 2014, Centurion notified AGC that it was sending an aircraft to Rio de Janeiro to "rescue [the] charter flight" because the "handling company hit one of [the] engines." The rescue aircraft delivered the cargo to Miami on February 13, 2014.

AGC seeks damages in the total amount of $245,200, comprising "demurrage exposure [42 hours] at $5,000 per hour" in the amount of $210,000 and "out of pocket payment" in the amount of $35,200. AGC did not actually incur the damages it seeks as demurrage "exposure." AGC made a payment of $32,000 for demurrage charges to the air freight company that was scheduled to fly the machinery from Miami, Florida to St. Johns, Newfoundland.

The Agreement between AGC and Centurion states, in pertinent part,

> It is agreed that no time is fixed for completion of carriage hereunder . . . . [Centurion] does not undertake to commence or complete transportation or effect delivery of cargo within any particular time. No employee, agent or representative of [Centurion] is authorized to bind [Centurion] by any statements or representations of the dates or times of departure, arrival or duration of any flight.

Agreement at ¶ 2.1.

## LEGAL STANDARD

"The Court shall grant summary judgment if the movant shows that there is no genuine

2

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1). "In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine material fact and that it is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Further, the existence of a "scintilla" of evidence in support of the non-movant's position is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, a court need not permit a case to go to a jury when the inferences that are drawn from the evidence, and upon which the non-movant relies, are "implausible." *Matsushita*, 475 U.S. at 592-94; *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

At the summary judgment stage, the judge's function is not to "weigh the evidence and

3

determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* The Court must also determine whether the dispute about a material fact is indeed genuine, that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see, e.g., Marine Coatings of Ala., Inc. v. United States*, 932 F.2d 1370, 1375 (11th Cir. 1991).

## DISCUSSION

Defendant seeks summary judgment on the basis that there was no delay in the delivery of the machinery pursuant to the Agreement because the Agreement explicitly states that Defendant did not undertake to deliver the machinery within any prescribed time. In response, Plaintiff argues that the Court should infer that time was of the essence due to the nature of the contract.

The Montreal Convention has complete preemptive effect over all claims within its scope, and provides that "[i]n the carriage of passengers, baggage and cargo, any action for damages however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention." Montreal Convention, art. 29. Thus, the Montreal Convention provides the exclusive remedies for claims within its scope, and precludes claims regarding covered matters that do not meet the Convention's criteria and to the extent they exceed its liability limitations.

With respect to delays in the carriage of cargo, the Convention provides:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Montreal Convention, art. 19.

As the Montreal Convention provides no criteria for establishing a prima facie case for delay damages, the Court looks to Florida contract law to determine whether the two-day deviation from the tentative schedule which occurred in the instant matter can form the basis of a claim for damages. As a starting point, a review of the Agreement reveals that its terms are clear and unambiguous. Thus, "the parties' intent must be gleaned from the four corners of the document, and in such a situation, the language itself is the best evidence of the parties' intent, and its plain meaning controls." *Pretka v. Kolter City Plaza II, Inc.*, 550 F. App'x 830, 834 (11th Cir. 2013).

The express provisions of the Agreement state that "no time is fixed for the completion of carriage" and that Centurion did not "undertake to commence or complete transportation or effect delivery of cargo within any particular time." Nonetheless, Plaintiff would have the Court look beyond the terms of the contract to determine that time was of the essence based upon the subject matter of the contract. To that end, Plaintiff offers the deposition testimony of Jeff Alan, AGC's President, in which Mr. Alan states, "that's the purpose of the entire contract, time being of the essence, chartering an airplane. You do not charter an airplane unless time is of the essence. You just don't do it. It's not done. Period."

In the face of the clear and unambiguous language to the effect that time was *not* of the essence in the execution of the Agreement, Mr. Alan's deposition testimony, which seeks to circumvent or contradict the provisions of the contract, is of no moment and otherwise insufficient to create a genuine dispute of a material fact. *See B&G Aventura, LLC v. G-Site Ltd. P'ship*, 97 So.3d 308 (Fla. 3d DCA 2012). Accordingly, the Court finds that Plaintiff's claim for delay damages must fail, and Defendant's motion for summary judgment must be granted.

## CONCLUSION

Therefore, it is **ORDERED, ADJUDGED,** and **DECREED** that Defendant's Motion for Summary Judgment **(DE 9)** be, and the same is, hereby **GRANTED**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, in Miami, Miami-Dade County, Florida, this 23rd day of September, 2015.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Cc:   All counsel of record